Case No. 25-cv-08903 (ALC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAMELA WRIDT and ROBERT SAUVE,

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

*STEVEN BANKS*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Andrea Liberatore*
*Tel: (212) 356-3187*
*aliberat@law.nyc.gov*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................... III

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL BACKGROUND ....................................................................................... 2

LEGAL STANDARDS ............................................................................................... 4

      A.  Dismissal under Rule 12(b)(1)......................................................... 4

      B.  Dismissal under Rule 12(b)(6)......................................................... 5

ARGUMENT ............................................................................................................... 6

     POINT I ................................................................................................... 6

        THE COURT LACKS SUBJECT MATTER
        JURISDICTION OVER NEARLY ALL OF
        PLAINTIFFS' CLAIMS BECAUSE PLAINTIFFS
        LACK STANDING TO BRING THOSE CLAIMS. .................................6

        A.  Plaintiffs Lack Standing to Bring Their Global
           Fourth Amendment Challenge to DAS
           Surveillance ..................................................................... 7

        B.  Plaintiffs Lack Standing to Bring Any First
           Amendment Claim........................................................... 10

     POINT II ................................................................................................. 13

        PLAINTIFFS FAIL TO STATE A FOURTH
        AMENDMENT CLAIM..................................................................13

        A.  The Alleged DAS Surveillance Does Not Give
           Rise to a Fourth Amendment Claim ................................. 13

        B.  Plaintiffs' Allegations Do Not Plead the Fourth
           Amendment Violations Recognized by *Carter*
           and its Progeny ................................................................ 17

     POINT III................................................................................................. 19

        PLAINTIFFS FAIL TO STATE A FIRST
        AMENDMENT CLAIM..................................................................19

**Page**

CONCLUSION ................................................................................................................ 20

CERTIFICATE OF COMPLIANCE ............................................................................. 21

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Am. C.L. Union v. Nat'l Sec. Agency,*
   493 F.3d 644 (6th Cir. 2007) ............................................................................10

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*
   671 F.3d 140 (2d Cir. 2011)...........................................................................7, 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................................5

*Baur v. Veneman,*
   352 F.3d 625 (2d Cir. 2003)...........................................................................6, 9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................5

*California v. Ciraolo,*
   476 U.S. 207 (1986)....................................................................................14, 15

*Canning v. Admin. for Children's Servs.,*
   588 F. App'x 48 (2d Cir. 2014) .........................................................................4

*Carpenter v. United States,*
   585 U.S. 296 (2018)............................................................................17, 18, 19

*Cerame v. Slack,*
   123 F.4th 72 (2d Cir. 2024) ............................................................................10

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)..........................................................................6, 7, 9, 11, 12

*Daly v. Citigroup Inc.,*
   939 F.3d 415 (2d Cir. 2019)..............................................................................4

*DiFolco v. MSNBC Cable L.L.C.,*
   622 F.3d 104 (2d Cir. 2010)..............................................................................5

*Fifth Ave. Peace Parade Comm. v. Gray,*
   480 F.2d 326 (2d Cir. 1973).................................................................10, 11, 13

*Gaston v. Gavin,*
   No. 97 Civ. 1645 (JGK), 1998 WL 7217
   (S.D.N.Y. Jan. 8, 1998),
   *aff'd*, 172 F.3d 37 (2d Cir. 1998) ....................................................................19

**Cases**                                                                                                          **Pages**

*Handschu v. Special Servs. Div.*,
    475 F. Supp. 2d 331 (S.D.N.Y. 2007),
    *vacated on other grounds,*
    No. 71 Civ. 2203(CSH), 2007 WL 1711775
    (S.D.N.Y. June 13, 2007) ...........................................................................11, 13, 20

*J.S. v. Attica Cent. Sch.*,
    386 F.3d 107 (2d Cir. 2004) ...................................................................................4

*Katz v. United States*,
    389 U.S. 347 (1967) ..........................................................................................14, 17

*Kyllo v. United States*,
    533 U.S. 27 (2001) ................................................................................................15

*Laird v. Tatum*,
    408 U.S. 1 (1972) ...........................................................................10, 11, 12, 19, 20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..............................................................................................6

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ...................................................................................4

*Nat'l Org. for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013) .................................................................................10

*Noriega v. Abbott Laboratories*,
    714 F. Supp. 3d 453 (S.D.N.Y. 2024) ....................................................................5

*Nour v. New York City Police Dep't*,
    No. 92 CIV. 7066 (JFK), 1995 WL 42319
    (S.D.N.Y. Feb. 2, 1995) ........................................................................................19

*Rodriguez v. United States*,
    878 F. Supp. 20 (S.D.N.Y. 1995) .........................................................................16

*Scholl v. Illinois State Police*,
    776 F. Supp. 3d 701 (N.D. Ill. 2025) ....................................................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..............................................................................................6

*United Presbyterian Church in the U.S.A. v. Reagan*,
    738 F.2d 1375 (D.C. Cir. 1984) ..................................................................11, 12, 13

**Cases**                                                                    **Pages**

*United States v. Davis*,
   326 F.3d 361 (2d Cir. 2003)..................................................................................14

*United States v. Dennis*,
   41 F.4th 732 (5th Cir. 2022) .........................................................................14, 18

*United States v. Harry*,
   130 F.4th 342 (2d Cir. 2025) ...........................................................13, 14, 15, 18

*United States v. Hay*,
   95 F.4th 1304 (10th Cir. 2024),
   *cert. denied*, 145 S. Ct. 591 (2024) ...............................................14, 15, 18

*United States v. Knotts*,
   460 U.S. 276 (1983)..........................................................................................13

*United States v. Tuggle*,
   4 F.4th 505 (7th Cir. 2021),
   *cert. denied*, 142 S. Ct. 1007 (2022) .............................................14, 18

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
   454 U.S. 464 (1982).............................................................................................6

**Statutes**

Fed. R. Civ. P. 12(b)(1).......................................................................................2, 4

Fed. R. Civ. P. 12(b)(6).......................................................................................2, 5

## PRELIMINARY STATEMENT

Plaintiff's Complaint (ECF No. 1) implausibly describes New York City like a chapter in George Orwell's novel, *1984*, casting the New York City Police Department ("NYPD") as the omnipresent Big Brother that inexplicably manages to "watch" and "track" the City's over 8 million residents through a program known as the Domain Awareness System ("DAS"). Yet, despite many paragraphs dedicated to vastly exaggerating NYPD's information-gathering technologies and data storage in DAS, the Complaint reveals a fact detrimental to its broad challenge—Plaintiffs themselves have not been subjected to the purported surveillance and data aggregation that allegedly offends the First and Fourth Amendments.

The Complaint generally alleges that NYPD, through DAS, collects and aggregates vast amounts of information on individuals from multiple sources including social media accounts, Automated License Plate Readers ("ALPRs"), finger prints, iris scans, X-ray imaging, DNA, criminal records, cryptocurrency transactions, 911 calls, shot gun sensors, and video footage from body-worn, handheld, dashboard and aerial cameras. However, the Complaint is devoid of facts alleging that, or even suggesting that, these information-gathering techniques have been used to collect and aggregate information on Plaintiffs themselves. Indeed, the Complaint describes the DAS surveillance that Plaintiffs have been *personally* subjected to and injured by as only the collection of information Plaintiffs have knowingly exposed to the public—i.e., the exterior recording of their home by two stationary cameras—a practice which has been routinely upheld by courts.

Perhaps aware of the weakness of their personal claims, Plaintiffs dedicate the majority of the Complaint to speculating on possible, future injury that *could* befall New Yorkers, rather than actual and concrete injury that Plaintiffs themselves have suffered. But this Court is not a forum for citizens to publicly air their grievances with NYPD or formulate conspiracy

theories on how NYPD might use DAS in the future. Because the Complaint lacks well-pleaded facts establishing that Plaintiffs themselves have suffered a First or Fourth Amendment violation from NYPD's DAS surveillance, it must be dismissed.

Accordingly, Defendant City of New York ("Defendant" or "City") moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs lack standing to bring their broad challenge to DAS under the Fourth Amendment because they fail to allege that they themselves have been subjected to and injured by the purported practices they seek to enjoin. Furthermore, because Plaintiffs fail to plead a First Amendment injury beyond a subjective chilling effect, they lack standing to bring any First Amendment challenge. Finally, the alleged observation and data storage that Plaintiffs arguably do have standing to challenge, do not amount to a Fourth Amendment violation, and, even if Plaintiffs had standing to bring a First Amendment challenge, it would fail.

## **FACTUAL BACKGROUND**[1]

Plaintiffs are two residents of Brooklyn, New York. Compl. ¶ 34. Plaintiff Wridt is a children's rights advocate and researcher, and Plaintiff Sauve is a professional radio disc jockey. Compl. ¶¶ 85-86. Together, the two share a home in the Bedford Stuyvesant neighborhood. Compl. ¶ 34.

Plaintiffs allege that they have been subjected to "surveillance through the DAS in this shared Brooklyn home." Compl. ¶¶ 11-12. Specifically, Plaintiffs allege that "NYPD mounted a box with two cameras directly outside their home" and that these cameras are "aimed at their living room and bedroom windows." Compl. ¶ 37.

---

[1] For the purposes of this motion, the facts alleged in the Complaint and incorporated documents are deemed to be true.

Plaintiffs further allege that, as a result of the cameras' presence, they have "lost the enjoyment and value of their home" because they "no longer use their front yard, rent out their apartment, open their blinds, or open their windows widely for air." Compl. ¶ 88. Plaintiffs also allege that the cameras inflict "ongoing emotional distress" in the form of the stress, anxiety, and the inability to feel at ease. Compl. ¶¶ 87-88. Plaintiffs provide no details regarding any loss of the pecuniary value of their property.

Apart from the exterior recording of their home, Plaintiffs allege minimal and unspecified interactions with NYPD and DAS. Plaintiff Sauve alleges that "he has been subjected to police surveillance and harassment since adolescence, beginning with stop-and-frisk encounters," and that he has been photographed by NYPD officers at protests "[o]ver the years." Compl. ¶ 86. Plaintiff Wridt alleges that she has "engaged directly with [NYPD] regarding surveillance in her own neighborhood" through the "filing of a civilian complaint and records request concerning the two NYPD-owned cameras installed outside her residence." Compl. ¶ 85. "Beyond their home," Plaintiff Wridt reports feeling "a pervasive awareness of cameras wherever she travels," and Plaintiff Sauve reports that he "no longer attends protests, deterred by NYPD photographing participants." Compl. ¶ 90. Both Plaintiff further allege that they "believe their activism and associations have placed them under heightened scrutiny, chilling their ability to exercise their rights freely." Compl. ¶ 90.

Notwithstanding the limited scope of Plaintiffs' interactions with NYPD and DAS, Plaintiffs allege that the Domain Awareness System or DAS is a "voyeuristic policing platform" that allows NYPD to aggregate data from multiple information-gathering sources to "chart people's thoughts, plans, beliefs, and affiliations" Compl. ¶ 2, and "track individuals across space and time." Compl. ¶ 18. Plaintiffs allege that the information which enables this data aggregation

and tracking includes: (1) thirty days of stored footage from body-worn, hand-held, stationary, aerial, and dashboard cameras; (2) information collected from social media surveillance; (3) five years of license plate information from ALPRs; (4) biometric data from fingerprint, DNA, and iris scan collection; (5) information from phone taps, x-ray imaging, and digital record aggregation; (6) analysis of cryptocurrency transactions; (7) information from location and gunshot sensors; and (8) 911 calls, 311 civilian complaints, arrest reports, parole and probation files, and state criminal records. *See* Compl. ¶¶ 17, 24, 44.

Apart from the recording of the exterior of their home by two stationary cameras mounted on a single box, Plaintiffs do not allege that they have been subject to any of the above information-gathering techniques or data storage.

## LEGAL STANDARDS

### A.    Dismissal under Rule 12(b)(1)

The Court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Daly v. Citigroup Inc.*, 939 F. 3d 415, 425 (2d Cir. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Canning v. Admin. for Children's Servs.*, 588 F. App'x 48, 49 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113).

While in reviewing a motion to dismiss under 12(b)(1), a court accepts as true the material facts of a complaint, it cannot draw inferences from the complaint in the Plaintiff's favor. *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Furthermore, in resolving a 12(b)(1) motion, the Court "may refer to evidence outside the pleadings." *Makarova*, 201 F3d at 113.

**B.    <u>Dismissal under Rule 12(b)(6)</u>**

To survive a motion to dimiss under Rule 12(b)(6), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausible claims are those alleging "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations of the complaint must be more than speculative and must show the grounds upon which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In its review of a motion to dismiss for failure to state a claim, a court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). While a Court must accept all well pleaded facts in the Complaint as true, "where 'a document relied on in the complaint contradicts allegations in the complaint, the document ... control[s], and the court need not accept the allegations in the complaint as true.'" *Noriega v. Abbott Lab'ys*, 714 F. Supp. 3d 453, 457 (S.D.N.Y. 2024) (citation omitted). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### POINT I

### THE COURT LACKS SUBJECT MATTER JURISDICTION OVER NEARLY ALL OF PLAINTIFFS' CLAIMS BECAUSE PLAINTIFFS LACK STANDING TO BRING THOSE CLAIMS.

Under Article III of the United States Constitution, a federal court's jurisdiction is limited to deciding actual cases or controversies. U.S. Const. art. III, § 2. Rooted in the traditional understanding of what constitutes a case or controversy is the doctrine of standing. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). To have standing to sue, a plaintiff must satisfy three elements— "injury-in-fact, causation, and redressability." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

The initial element, injury in fact, requires a showing that plaintiffs have "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). In assessing whether an alleged injury is "concrete and particularized," courts "assess whether the injury 'affects the plaintiff[s] in a personal and individual way.'" *Baur*, 352 F.3d at 632 (quoting *Lujan*, 504 U.S. at 560 n.1). By doing so, courts ensure that plaintiffs have "a personal stake in the controversy and avoid having the federal courts serve as 'merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding.'" *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 473 (1982)). Furthermore, to be "actual or imminent" a plaintiff's alleged injury cannot be "too speculative" and must be "*certainly impending*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted). Accordingly, allegations of *possible* future injury are insufficient." *Id.* (citations omitted).

Here, Plaintiffs seek an order declaring *all* DAS policies and practices unconstitutional, enjoining Defendant from further use of *any* DAS technology, and ordering Defendant to delete *all* data stored in DAS. *See* Compl. at 27-28. However, Plaintiffs fail to show an injury-in-fact to support their global challenge to DAS surveillance and the broad relief they seek. First, with respect to Plaintiffs' Fourth Amendment challenge, Plaintiffs lack standing to challenge any DAS surveillance apart from the purported video recording of Plaintiffs' home by two NYPD cameras mounted on a box outside of Plaintiffs' residence. Second, with respect to Plaintiffs' First Amendment challenge, because Plaintiffs fail to plead injury beyond a subjective chilling effect, they lack standing to bring any First Amendment claim.

**A.     Plaintiffs Lack Standing to Bring Their Global Fourth Amendment Challenge to DAS Surveillance**

To have standing to challenge government surveillance under the Fourth Amendment, a plaintiff must have suffered a direct injury—i.e., a privacy violation—as a result of that surveillance. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148 (2d Cir. 2011) (holding that plaintiffs lacked standing to challenge the government acquisition of financial records, where they failed to allege facts to support that their records were among those acquired). Injury cannot be based on a "speculative fear" that the government may in the future unlawfully search and seize Plaintiffs' protected information. *Clapper*, 568 U.S. at 410. Nor can a party "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416.

Here, Plaintiffs fail to allege that they have been personally subjected to and injured by the purported DAS surveillance and data aggregation that they seek to challenge. Plaintiffs attack a slew of alleged NYPD information-gathering techniques under the theory that information from such techniques are purportedly stored, aggregated, and accessed in DAS, and that the

7

aggregation of this data constitutes an illegal invasion of privacy. *See* Compl. ¶ 31 (alleging DAS aggregates data from different information-gathering techniques to "uncover constitutionally protected activity"). Critically, however, Plaintiffs fail to allege any details regarding how NYPD has employed these purported information-gathering techniques to collect, store, and aggregate Plaintiffs' *own* personal information. A review of the Complaint reveals that Plaintiffs fail to allege that, or allege facts to support the inference that, they themselves have been subjected to the very surveillance and aggregation of data that purportedly constitutes a constitutional injury.

        For example, Plaintiffs broadly allege that NYPD surveils individual social media platforms and stores information gathered to "map out a person's relationships, religious beliefs, and political affiliations, among other things." Compl., ¶ 17. Yet, Plaintiffs fail to allege that they own, operate, or are associated with a social media account where they post private information that NYPD has, or could, access and store in DAS. Plaintiffs also identify the use of ALPRs as the "backbone" of NYPD's tracking capabilities *see* Compl., ¶ 48, but fail to allege that Plaintiffs themselves are associated with, own, or drive any vehicle in the City, and that the license plate of such vehicle has been recorded by an ALPR. *See Scholl v. Illinois State Police*, 776 F. Supp. 3d 701, 709 (N.D. Ill. 2025) (finding plaintiffs had standing to challenge the use of ALPRs where plaintiffs alleged they "regularly drive . . . using the same personal vehicle . . . in areas covered by [the challenged] ALPR system"). Indeed, a similar pattern can be observed throughout the entire Complaint, where Plaintiffs take issue with numerous purported information-gathering techniques and data storage—the collection of finger prints, iris scans, DNA, 911 calls, arrest reports, criminal records, gunshot detection, location sensors, financial and cryptocurrency analysis, and body cam, handheld, dashboard, and aerial camera footage—but fail to allege that Plaintiffs *themselves* have been subjected to such surveillance, or allege any facts, such as a prior arrest or criminal history,

to suggest that such information would have been or will be collected from Plaintiffs and stored in DAS.

In fact, Plaintiffs only specifically allege that they themselves "have been subject to surveillance through the DAS in their shared Brooklyn home" Compl. ¶¶ 11-12, through video recording from an NYPD-mounted box that contains two cameras located outside their home. Compl. ¶ 87. The only purported effects from DAS surveillance that Plaintiffs allege they have personally experienced—the loss of enjoyment and value of their home and emotional distress—stem solely from the video recording by the two NYPD cameras. Compl. at ¶¶ 87-88. Indeed, "[b]eyond their home" Plaintiffs only report of "a pervasive awareness of cameras" by Plaintiff Wridt, and a purported reluctance to attend protests by Plaintiff Sauve for fear of being photographed. Compl. ¶ 90.

Accordingly, Plaintiffs fail to allege that they have a "personal stake" in challenging the alleged surveillance and data aggregation that purportedly constitute a Fourth Amendment violation. *Baur*, 352 F.3d at 632. Without facts tying the alleged NYPD information-gathering techniques and storage of obtained information in DAS directly to Plaintiffs, Plaintiffs lack standing to challenge such surveillance and data storage. *See Amidax Trading Grp.*, 671 at 148. At best, Plaintiffs' Complaint alleges an unsupported and speculative fear that Plaintiffs may one day be subjected to various purported NYPD information-gathering techniques, and that information gathered from such techniques may at some point be stored in DAS. This is not enough to meet the injury-in-fact requirement. *See Clapper*, 568 U.S. at 410.

Therefore, Plaintiffs lack standing to bring their broad challenge against all methods of DAS surveillance. Furthermore, as explained further below, the only surveillance Plaintiffs specifically allege they have been subjected to and harmed from—the purported video

recording from two NYPD cameras mounted on a single box outside their home—does not constitute a Fourth Amendment violation. *See infra* Part II.

**B.    Plaintiffs Lack Standing to Bring Any First Amendment Claim**

To meet the injury-in-fact element of standing for a First Amendment claim, "[a] plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013) (citing *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). To plead something more than subjective chill, a plaintiff must allege that their First Amendment rights have been "regulated, constrained or compelled directly by the government's actions"—i.e., that the government has taken or will take some action to restrict plaintiff's protected expression. *Am. C.L. Union v. Nat'l Sec. Agency*, 493 F.3d 644, 661 (6th Cir. 2007); *see also Cerame v. Slack*, 123 F.4th 72, 81 n.12 (2d Cir. 2024) ("[T]he standing inquiry ultimately boils down to whether there is a credible threat of enforcement against a plaintiff.").

In the context of alleged government surveillance, the Supreme Court of the United States has held that allegations of First Amendment infringement based on "the mere existence, without more, of a governmental investigative and data-gathering activity" do not plead sufficient injury for standing. *Laird v. Tatum*, 408 U.S. 1, 10 (1972). In *Laird*, plaintiffs alleged that they were the subject of federal surveillance while engaged in lawful political activity, and that the information gathered was stored on a computer database and disseminated. *See id.* at 2-3; *see also Fifth Ave. Peace Parade Comm. v. Gray*, 480 F.2d 326, 331 (2d Cir.1973) (summarizing *Laird* and citing to the complaint). Because plaintiffs' allegations of injury stemmed solely from their knowledge that the government was engaged in certain surveillance and data collection, or from their fear of actions that the government *may* take in the future based on information gathered,

rather than a claim of specific present harm or a threat of specific future harm, the Supreme Court held plaintiffs failed to present a justiciable controversy. *Id.* at 10-11.

Following *Laird*, courts have routinely held that First Amendment challenges based solely on a purported, subjective chilling effect, rather than actual governmental constraint or the threat of such constraint, fail to present a justiciable claim. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418, (2013) (finding plaintiffs lacked standing to challenge law authorizing federal surveillance of communications with foreign individuals based on alleged harm caused by plaintiffs' fear that the government may intercept their calls with foreign contacts in the future); *Gray*, 480 F.2d at 330–33 (finding organizers of anti-war protest who alleged that an FBI investigation chilled their First Amendment rights by data collection and dissemination failed to show specific harm); *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984) (holding that allegations that plaintiffs were likely to be targets of unlawful surveillance by the NSA did not satisfy the injury-in-fact requirement); *Handschu v. Special Servs. Div.*, 475 F. Supp. 2d 331, 354 (S.D.N.Y. 2007), *vacated on other grounds,* No. 71 CIV. 2203(CSH), 2007 WL 1711775 (S.D.N.Y. June 13, 2007) (noting that allegations that protesters were photographed and videotaped by NYPD while protesting "fall well short of articulating a justiciable constitutional claim").

*Laird*, and its progeny, warrant dismissal of Plaintiffs' First Amendment claim. Plaintiffs allege a fear that they are being watched and monitored by various purported NYPD information-gathering techniques and that this fear has "chilled" their First Amendment rights. *See* Compl., ¶¶ 3, 83, 90. Critically, however, Plaintiffs fail to identify any actual threat of governmental constraint or restriction of protected First Amendment activity, citing only to the fear that their activity may in some way be recorded by NYPD. *See* Compl. ¶ 90 (alleging that

Plaintiff Wridt experiences "a pervasive awareness of cameras," and that Plaintiff Sauve is deterred from attending protests by "NYPD officers photographing participants"). Plaintiffs do not allege that they have been personally subjected to or fear being subjected to any enforcement, arrest, fine, physical harm, professional harm, or any other action by NYPD that would constitute a "concrete harm . . . apart from the 'chill' itself." *See Reagan*, 738 F.2d at 1378 (collecting Supreme Court cases that found a concrete injury warranting a "chilling effect" such as denial of a professional license, discharge from employment, denial of mail delivery, or threat of employment dismissal for failure to take an oath). Plaintiffs' allegations of a chilling effect based solely on the existence of NYPD's purported information-gathering and storage are "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 14.

As described above, Plaintiffs fail to allege details regarding how NYPD has employed the numerous purported information-gathering techniques to collect and store Plaintiffs *own* personal information. Indeed, the Complaint is silent on key facts that could support any inference that Plaintiffs themselves have been subjected to the very surveillance and aggregation of data that purportedly chills First Amendment expression. Plaintiffs only specifically allege that they themselves have been subjected to video recording by two NYPD cameras located on a single box outside their home, and that Plaintiff Sauve has been previously photographed at unspecified protests. *See* Compl ¶¶ 86, 87. But these allegations stop short of identifying any actual free speech, association, or expression constraint. *See Clapper*, 568 U.S. 398, 419, 133 (2013) (noting a plaintiff cannot "establish standing simply by claiming that they experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on their part"). And allegations of government observation and surveillance, even of protected

activity such as protesting, without more, does not constitute First Amendment injury. *See Gray*, 480 F.2d at 330–33; *Handschu* 475 F. Supp. 2d at 354. Nor can Plaintiffs claim that the perceived loss of enjoyment and value of their home and emotional distress experienced constitutes sufficient injury where this injury stems solely from government information-gathering, and not the "imminence of concrete, harmful action such as threatened arrest for specifically contemplated First Amendment activity." *See Reagan*, 738 F.2d at 1380.

Because Plaintiffs fail to allege a First Amendment injury beyond a "belie[f] [that] their activism and associations have placed them under heightened scrutiny, chilling their ability to exercise their rights freely" Compl., ¶ 90, they lack standing to bring any First Amendment challenge.

## POINT II

## PLAINTIFFS FAIL TO STATE A FOURTH AMENDMENT CLAIM

### A.    The Alleged DAS Surveillance Does Not Give Rise to a Fourth Amendment Claim

The DAS surveillance Plaintiffs specifically allege they have been subject to and harmed from—the purported video recording of the exterior of their home—fails to state a Fourth Amendment violation.

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by the government. However, not all government surveillance implicates the Fourth Amendment. *See United States v. Harry*, 130 F.4th 342, 347 (2d Cir. 2025). Rather, to plead a Fourth Amendment search or seizure, a plaintiff must have "a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *United States v. Knotts*, 460 U.S. 276, 280 (1983) (internal quotation marks and citation omitted).

Plaintiffs do not have a protected privacy expectation in what they "knowingly expose[] to the public through an open door or window." *United States v. Davis*, 326 F.3d 361, 365 (2d Cir. 2003); *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection"). Indeed, the Fourth Amendment "has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares" notwithstanding an individual's attempt to "take[] measures to restrict some views of his activities." *California v. Ciraolo*, 476 U.S. 207, 213 (1986). With the advancement of modern technology, courts have recognized that law enforcement's use of "generally available technology," such as video cameras, to enhance their surveillance abilities from public viewpoints, does not constitute an unconstitutional search. *United States v. Hay*, 95 F.4th 1304, 1314 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 591, 220 (2024). For this reason, courts, routinely hold that the warrantless use of stationary pole cameras to capture images of an individual's home or business that are publicly visible, does not rise to the level of a Fourth Amendment violation. *See, e.g.*, *United States v. Harry*, 130 F.4th 342, 347 (2d Cir. 2025) (collecting cases); *Hay*, 95 F.4th at 1316 (holding video recording of the exterior of plaintiff's home for 68 days did not constitute a search); *United States v. Dennis*, 41 F.4th 732, 741 (5th Cir. 2022) (holding that government's warrantless pole camera surveillance of front and back of subject's home for over two months did not invade a protected privacy interest, despite subject erecting protective fences); *United States v. Tuggle*, 4 F.4th 505, 514 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1007 (2022) (holding that use of pole camera to surveil a suspect's house for eighteen months did not constitute a Fourth Amendment "search"). Even the use of video cameras with "tilting, panning, and zooming functionalities, and [a] connection to the internet," do not offend the constitutional bounds. *Harry*, 130 F.4th at 350.

Plaintiffs fail to state a Fourth Amendment claim because they only allege observation of what they have knowingly exposed to the public by law enforcement through generally available technology—i.e., the recording of the exterior of their home with a video camera, and the storage of such footage for a limited time (thirty days)—which courts have routinely held does not constitute a Fourth Amendment search. *See, e.g.*, *Harry*, 130 F.4th at 347 (holding 24-hour surveillance of the exterior of plaintiff's business collecting 50 days of video footage with a pole camera that could tilt, pan, zoom, and feed real-time footage to investigators via internet connection, did not constitute a Fourth Amendment search). Furthermore, Plaintiffs' allegations that the video cameras are "aimed at their living room and bedroom windows" Compl., ¶ 87, without more, does not elevate the alleged observation to a constitutional violation. *See Hay*, 95 F.4th at 1314 (finding that pole camera which incidentally captured activity inside the subject's house from a public vantage point did not violate the Fourth Amendment). Even in the context of surveillance of an individual's home and curtilage where "privacy expectations are most heightened," law enforcement may still lawfully observe what is visible to the public through an open door, window, or open yard, without obtaining a warrant. *See* Ciraolo, 476 U.S. at 213. (finding that the warrantless observation by police of marijuana plants growing in an individual's yard from an airplane flying over individual's property did not violate the Fourth Amendment) Rather, it is only where the "[g]overnment uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion" that the Fourth Amendment is implicated. *Kyllo v. United States*, 533 U.S. 27, 40 (2001) (finding that the government's use of a thermal imaging camera to observe details inside the subject's home that would be impossible to observe without physical intrusion constituted a search).

Here, in contrast, Plaintiffs fail to allege that the video cameras which allegedly record the exterior of their home capture any footage that would be otherwise be impossible to record from a public vantage point using generally available technology. Not only are these allegations absent from the Complaint, but the sources regarding NYPD's use of CCTV cameras that Plaintiffs incorporate into their Complaint suggest the opposite. *See* NYPD 2023 CCTV Impact Use and Policy[2] at 5 (explaining NYPD only installs CCTV cameras, or will access an external entity's camera, that "monitor[s] areas that are open and accessible to the public," and that "the field-of-view of all CCTV cameras accessible to NYPD personnel is strictly limited to public areas and locations"); *see* Compl. ¶ 44 n.21 (citing to NYPD 2023 CCTV Impact Use and Policy).

Apart from the video recording on their home, Plaintiff Sauve vaguely alleges that he has been photographed by NYPD at protests "over the years," but does not specify when this photography took place, at which protest, whether Plaintiff Sauve was participating in the protest, or whether the photographs purportedly taken were stored in DAS. Compl. ¶ 86. This vague allegation that NYPD at some point in time took Plaintiff Sauve's photograph at a public protest does not give rise to a Fourth Amendment search as individuals lack a "reasonable expectation of privacy on the public street." *Rodriguez v. United States*, 878 F. Supp. 20, 24 (S.D.N.Y. 1995);

---

[2] NYPD, *Closed-Circuit Television (CCTV) Systems: Impact Use and Policy*, NYC.GOV (Oct. 26, 2023),https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/post-final/cctv-systems-nypd-Impact-and-usepolicy_10.26.23.pdf.

*see also Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.").[3]

Because Plaintiffs fail to allege that they have been subjected to any observation and data collection by law enforcement in DAS beyond what they have knowingly exposed to public view, their Fourth Amendment claim must fail.

**B.      Plaintiffs' Allegations Do Not Plead the Fourth Amendment Violations Recognized by *Carter* and its Progeny**

In an attempt to bolster the allegations in their procedurally deficient Complaint, Plaintiffs argue that their Complaint pleads the type of Fourth Amendment violation recognized by the Supreme Court in *Carpenter v. United States*, 585 U.S. 296 (2018). *See* ECF No. 13 (Plaintiffs Opposition Letter to Defendant's Pre Motion Letter) at 2.

In *Carpenter*, the Supreme Court held that the government's collection of retrospective cell-site location information ("CSLI") from an individual's personal cell phone for a period of 127 days from one carrier, and seven days from another, constituted a Fourth Amendment search. *Carpenter*, 585 U.S. at 316. In reaching this conclusion, the Court noted how a cellphone is akin to an ankle monitor in that it "tracks nearly exactly the movements of its owner" and therefore, with CSLI, the government can retrace an individual's *exact* whereabouts over an extended period of time. *Id.* at 311. Indeed, the Court cautioned that its ruling in *Carpenter* was "a

---

[3] Plaintiff Sauve also alleges he been "subject to police surveillance and harassment since adolescence, beginning with stop-and-frisk encounters" Compl. ¶ 86. Yet, without context or factual details it is unclear whether these allegations are part of Plaintiffs' challenge to DAS' purportedly unconstitutional collection and storage of information. Indeed, the Complaint does not allege that information from "stop-and-frisks" is stored in DAS. Regardless, the Complaint fails to allege that any of Plaintiff Sauve's information was recorded by NYPD during these purported stop-and-frisks.

narrow one" that did not "call into question conventional surveillance techniques and tools, such as security cameras." *Id.* at 316.

Unsurprisingly, following *Carpenter*, courts, including the Second Circuit, have continued to uphold law enforcement's use of traditional surveillance techniques, such as video cameras, without a warrant. *See Harry*, 130 F.4th at 350-51; *see also Hay*, 95 F.4th at 1316; *Dennis*, 41 F.4th at 741; *Tuggle*, 4 F.4th at 514. Courts have distinguished stationary pole cameras that capture footage of a limited area as meaningfully different from "an all-encompassing 'feature of human anatomy' like one's cell phone." *Harry*, 130 F.4th at 350. While the video recording of a an individual's home over time will reveal "important sliver[s] of [the individual's] life," it does "not paint the type of exhaustive picture of his every movement that the Supreme Court has frowned upon [in *Carpenter*]." *Tuggle*, 4 F.4th at 524; *see also* Hay, 95 F.4th at 1316 (finding that despite allegations that the footage recorded "painted an intimate portrait of [the subject's] personal life," pole camera surveillance of subject's home did not amount to a Fourth Amendment search)

Here, Plaintiffs' allegations regarding the DAS surveillance they have been allegedly subjected to is a far cry from the retrospective tracking of an individual's exact whereabouts that the Supreme Court cautioned against in *Carpenter*. While the Complaint implausibly alleges, without factual support, that the NYPD aggregates information gathered through various distinct surveillance techniques in DAS to "reconstruct[] . . . the private lives of millions" Compl. ¶ 2 and "track individuals across space and time" Compl. ¶ 18, it fails to specifically allege that Plaintiffs themselves have been subjected to the purported information-gathering techniques that allow NYPD to reconstruct this private information and perform this alleged multidimensional tracking. *See supra* at 9-11. The only specific information regarding

Plaintiffs that the Complaint alleges the NYPD has collected—video footage of the exterior of Plaintiffs' home (that is deleted after thirty days in DAS), and photographs of Plaintiff Sauve at an unspecified protest—is not comparable to the over 127 days of precise location and movement history the Supreme Court grappled with in *Carpenter*.

### POINT III

### PLAINTIFFS FAIL TO STATE A FIRST AMENDMENT CLAIM

Even if the Court determines that Plaintiffs have standing to challenge the surveillance that Plaintiffs have been allegedly subjected to under the First Amendment, Plaintiffs must still allege cognizable injury beyond "mere surveillance by government authorities" to plead a First Amendment claim based on a purported chilling effect. *See Nour v. New York City Police Dep't*, No. 92 CIV. 7066 (JFK), 1995 WL 42319, at *3 (S.D.N.Y. Feb. 2, 1995) (citing *Laird*, 408 U.S. at 13). This Court has recognized that to "establish such a constitutional violation, a plaintiff must show both that a government investigation discouraged him from exercising his First Amendment rights, and that he suffered a concrete and demonstrable injury as a result." *Gaston v. Gavin*, No. 97 CIV. 1645 (JGK), 1998 WL 7217, at *4 (S.D.N.Y. Jan. 8, 1998), *aff'd*, 172 F.3d 37 (2d Cir. 1998). Critically, this injury must be objective, as allegations of "mental anguish emotional distress, fear, and pain" from government surveillance are insufficient to allege an objective First Amendment harm. *Nour*, 1995 WL 42319, at *3.

Plaintiffs fail to allege any First Amendment harm beyond their subjective chilling effect or injuries stemming from their subjective chilling effect. Plaintiffs do not allege that they have personally subjected to the intrusive purported surveillance that allegedly allows NYPD to uncover intimate information regarding an individual's beliefs and associations. *See supra* at 9-11. Nor do they allege any impending injury that would result—such as an arrest, physical harm,

pecuniary harm, etc.—even if NYPD could somehow collect this information regarding Plaintiffs. Rather, Plaintiffs, at best, solely allege that they have been recorded or photographed from public vantage points by NYPD, and that this has chilled their First Amendment expression. These allegations do not constitute a First Amendment claim. *Laird*, 408 U.S. at 13–14 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"); *Handschu* 475 F. Supp. 2d 331, 355 (S.D.N.Y. 2007) (finding no First Amendment constitutional claim based solely upon "NYPD practices of videotaping and photographing demonstrators.").

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint with prejudice, and grant Defendant such other and further relief that the Court deems just and proper.

Dated:      New York, New York
            March 6, 2026

                        **Steven Banks**
                        Corporation Counsel of the
                        City of New York
                        *Attorney for Defendant*
                        100 Church Street
                        New York, New York 10007


            By:     /s/ Andrea Liberatore
                    Andrea Liberatore
                    *Assistant Corporation Counsel*
                    (212) 356-3187
                    aliberat@law.nyc.gov

## **CERTIFICATE OF COMPLIANCE**

Counsel of Record hereby certifies that this brief complies with the word-count limitation of Rule 7.1(c) of the Local Rules of United States District Courts for the Southern and Eastern Districts of New York. Excluding the cover page, caption, any index, table of contents, table of authorities, signature blocks, and required certificate, but including material contained in footnotes, this brief contains approximately 5,864 words, which is less than the total words of 8,750 permitted by Local Rule 7.1(c).

Dated:     New York, New York
           March 6, 2026

**Steven Banks**
Corporation Counsel of the
City of New York
*Attorney for Defendant*
100 Church Street
New York, New York 10007

By:    /s/ *Andrea Liberatore*
       Andrea Liberatore
       *Assistant Corporation Counsel*
       (212) 356-3187
       aliberat@law.nyc.gov